IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JESSICA MARIE NGUYEN, | ) | CASE NO.  5:24-CV-00466-JRA |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | UNITED STATES DISTRICT JUDGE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MAGISTRATE JUDGE |
| SECURITY, | ) | JONATHAN D. GREENBERG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

Plaintiff, Jessica Nguyen ("Plaintiff" or "Nguyen"), challenges the final decision of Defendant, Martin O'Malley,[1] Commissioner of Social Security ("Commissioner"), denying her application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED for further proceedings consistent with this opinion.

## I.    PROCEDURAL HISTORY

In June 2019, Nguyen filed an application for POD and DIB, alleging a disability onset date of January 1, 2018, and claiming she was disabled due to chronic migraines, fibromyalgia, major depression, panic disorder, brain fog, positive ANA, and possible autoimmune disorder.  (Transcript ("Tr.") 15, 80.)

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security.

The application was denied initially and upon reconsideration, and Nguyen requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 15.)

On August 26, 2020, an ALJ held a hearing, during which Nguyen, represented by counsel, and an impartial vocational expert ("VE") testified.  (*Id.*)  On September 14, 2020, the ALJ issued a written decision finding Nguyen was not disabled.  (*Id.* at 15-25.)  The ALJ's decision became final on May 12, 2021, when the Appeals Council declined further review.  (*Id.* at 1-6.)

Nguyen timely filed for judicial review, and on December 16, 2021, on the stipulation of the parties, the Court vacated the ALJ's decision and remanded the case back to the Social Security Administration.  (*Id.* at 559.)  On June 6, 2022, the Appeals Council issued a Remand Order, instructing the ALJ to, in part:

- "Obtain evidence from a medical expert related to whether the claimant's impairment, including migraine headaches equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (20 CFR 404.1513a(b)(2) and SSR 17-2p)"; and

- "Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c."

(*Id.* at 577-79.)

On June 5, 2023, the ALJ held another hearing, during which Nguyen, represented by counsel, Ronald Koenig, M.D., an independent medical expert, and an impartial VE testified.  (*Id.* at 504-44.)  On January 8, 2024, the ALJ issued a written decision finding Nguyen was not disabled.  (*Id.* at 480-95.)

On March 12, 2024, Nguyen filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 6, 8-9.)  Nguyen asserts the following assignments of error:

2

(1)     The ALJ erroneously failed to comply with the Order of Remand when he failed to obtain complete testimony from a medical expert.

(2)     The ALJ erred and his decision was not supported by substantial evidence as he failed to properly evaluate Plaintiff's migraine headaches at Step Three of the Sequential Evaluation.

(3)     The ALJ erroneously failed to comply with the Order of Remand when he improperly assessed the medical opinions.

(Doc. No. 6.)

## II.     EVIDENCE

### A.     Personal and Vocational Evidence

Nguyen was born in December 1993 and was 29 years-old at the time of her second administrative hearing (Tr. 494), making her a "younger" person under Social Security regulations.  *See* 20 C.F.R. § 404.1563(c).  She has at least a high school education.  (Tr. 494.)  She has past relevant work as a general office clerk, social service aide, and resident supervisor.  (*Id*. at 493.)

### B.     Relevant Medical Evidence[2]

On December 28, 2017, Nguyen saw rheumatologist David Richter, M.D., for follow up.  (*Id.* at 329.)  Nguyen reported having a little more energy, but she continued to feel "foggy."  (*Id.*)  She told Dr. Richter she was sleeping well but was still tired when she awoke.  (*Id.*)  She endorsed achiness in her hips, knees, and elbows, but denied joint swelling.  (*Id.*)  She asked Dr. Richter for anxiety medication.  (*Id.*)  She reported exercising and taking Vitamin D.  (*Id.*)  She was working full-time as a case worker at a halfway house.  (*Id.*)  On examination, Dr. Richter found Nguyen "slightly anxious" in appearance, no synovitis or deformity of the joints, tenderness of the anserine and trochanteric bursae, and multiple mild muscular tender points.  (*Id.* at 330.)  Dr. Richter stated: "Most symptoms are suggestive of fibromyalgia

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

3

including associated disorders of migraine headaches and probable irritable bowel syndrome." (*Id.* at 331.) Nguyen's diagnoses included positive ANA, fibromyalgia, chronic fatigue, and Vitamin B12 and D deficiency. (*Id.*) Dr. Richter increased Wellbutrin and started Zoloft. (*Id.*)

On May 16, 2018, Nguyen saw Kimberly Stewart, M.D, regarding her elevated ANA and high sedimentation rate. (*Id.* at 284.) Nguyen reported her biggest concern was her brain fog. (*Id.*) Nguyen also endorsed pain in her knees, hips, shoulders, and neck, as well as dizziness, stiffness during half the day, redness of the face, and fatigue. (*Id.* at 285.) Nothing helped her pain. (*Id.*) She took Advil and Aleve. (*Id.*) Nguyen told Dr. Stewart she thought she had taken Cymbalta, but it did not help. (*Id.*) On examination, Dr. Stewart found a mild decrease in range of motion of the cervical spine, tenderness of the paraspinal area, and tenderness of the elbows, hips, and knees. (*Id.* at 285-86.) Dr. Stewart determined Nguyen's examination and medical history were "most suggestive of fibromyalgia." (*Id.* at 284.) Dr. Stewart discussed fibromyalgia management with Nguyen. (*Id.*)

On July 10, 2018, Nguyen saw Lawrence Saltis, M.D., for her migraines. (*Id.* at 265.) Nguyen reported headaches a few days a month that were usually one-sided but occasionally both. (*Id.*) Nguyen described her headaches as throbbing, and they were worse with weather changes. (*Id.*) She told Dr. Saltis she had been put on Imitrex, but she never wanted to take it. (*Id.*) She took sertraline for her panic disorder and did not want to take anything that would interact with the sertraline. (*Id.*) Nguyen endorsed feeling dizzy often and feeling unsteady while walking, especially when going upstairs. (*Id.*) She must hold onto the railing. (*Id.*) She denied feeling tired during the day. (*Id.*) Dr. Saltis noted a normal attention span to tasks and that Nguyen "concentrates well when asked." (*Id.* at 266.) Dr. Saltis diagnosed Nguyen with common migraine without intractability and started Nguyen on Effexor. (*Id.*)

On January 25, 2019, Nguyen saw Dr. Stewart for follow up and medication refills. (*Id.* at 279.) Nguyen reported she had seen nuerology a few months ago for her headaches and had her medications

4

adjusted.  (*Id.*)  Nguyen told Dr. Stewart Effexor helped her headaches and anxiety. (*Id.* at 279-80.)  While Naproxen helped her joint pain somewhat, it was not enough.  (*Id.* at 280.)  That day, Nguyen stated the pain was mostly in her knees and mid-back.  (*Id.*)  Nguyen endorsed whole-day stiffness and hand pain consisting of shooting pain to her fingers.  (*Id.*)  She told Dr. Stewart she had a new job but needed to be able to "think better."  (*Id.*)  Nguyen stated she was not exercising because it was winter.  (*Id.*)  On examination, Dr. Stewart found elevated ANA, myofascial pain, and sicca.  (*Id.* at 279-80.)  Dr. Stewart also found tenderness of the elbows, wrists, hips, and knees.  (*Id.* at 280.)  Dr. Stewart started Nguyen on Plaquenil.  (*Id.* at 279.)

On April 15, 2019, Nguyen saw Jennifer Dy, D.O., to establish care and to discuss her migraines and depression concerns.  (*Id.* at 343.)  Nguyen reported migraines since her first year of college and endorsed light sensitivity and nausea.  (*Id.* at 344.)  She needed to lay in a dark room to alleviate her migraines.  (*Id.*)  Venaflaxine helped as a preventative medication when she first started it, but now she was getting a migraine once a week.  (*Id.*)  Nguyen told Dr. Dy her migraines were becoming more severe and lasting longer, and Naproxen did not help.  (*Id.* at 345.)  She reported having to call off work because of her migraines.  (*Id.*)  Nguyen denied having kept a headache diary before.  (*Id.*)  She told Dr. Dy she did not think Plaquenil was making her migraines worse.  (*Id.*)  Excedrin did not work for her.  (*Id.*)  Nguyen also endorsed depression, stating she was struggling to get out of bed and go to work.  (*Id.*)  She also endorsed pain in her joints, knees, shoulders, elbows, and back.  (*Id.*)  Dr. Dy diagnosed Nguyen with migraine headache, Hashimoto's thyroiditis, positive ANA, elevated erythrocyte sedimentation rate, and major depression, recurrent.  (*Id.* at 343.)  Dr. Dy stopped Imitrex, which Nguyen said she had never taken, and started Maxalt.  (*Id.*)  Dr. Dy discussed potential migraine triggers with Nguyen and encouraged her to keep a headache diary.  (*Id.*)  Regarding Nguyen's depression, Dr. Dy noted Nguyen

was on Venlafaxine and that her depression was not controlled. (*Id.* at 344.) Dr. Dy referred Nguyen to an outpatient behavioral health clinic. (*Id.*)

On May 17, 2019, Nguyen saw David Kern for a behavioral health intake assessment. (*Id.* at 364.) Her doctor referred her for treatment of her depression and anxiety; Nguyen was already taking Effexor and her doctor did not want to add another antidepressant, so she referred Nguyen for medication management. (*Id.*) Nguyen's treatment goals included: increase motivation; manage anxiety and depression; and medication management. (*Id.*) Nguyen endorsed daily sadness, fatigue, increased sleep, nervousness, panic attacks, sadness/hopelessness, loss of interest/pleasure in activities, feeling worthless/guilty, low energy, increased/decreased appetite, heart racing, feelings of choking, losing control, and dying, lightheadedness, dizziness, and clammy hands. (*Id.* at 364-65.) Nguyen reported her medication had been helping her symptoms. (*Id.* at 365.) She experienced panic symptoms once a day or every few days. (*Id.* She avoided activities out of fear of developing panic symptoms. (*Id.*) On examination, Kern found Nguyen demonstrated an appropriate affect, cooperative behavior, anxious/depressed mood, good insight and judgment, and logical thought process. (*Id.* at 368-69.) Kern diagnosed major depressive disorder, panic disorder, and unspecified trauma and stressor related disorder. (*Id.* at 370.)

On May 24, 2019, Nguyen saw Dr. Dy for follow up. (*Id.* at 347.) Nguyen reported that Maxalt was helping. (*Id.* at 350.) She was taking Maxalt every few days and she was getting headaches twice a week. (*Id.*) She thought weather, stress, and her mood triggered her migraines. (*Id.*) Nguyen told Dr. Dy she took Maxalt as soon as she got a migraine, and it usually alleviated her headache, although sometimes she had to take two pills. (*Id.*) While Nguyen reported getting relief from Maxalt, she thought she would benefit from a prophylactic medication since she was taking Maxalt so often. (*Id.* at 347.) Dr. Dy noted she would prescribe Topiramate for this. (*Id.*) Dr. Dy also discussed potential migraine triggers and again

6

encouraged Nguyen to keep a headache diary.  (*Id.*)  Dr. Dy noted Nguyen had "severe depression" and that she had "failed multiple other antidepressants."  (*Id.* at 349.)  Dr. Dy referred Nguyen to psychiatry for medication management.  (*Id.*)

On May 28, 2019, Nguyen saw Dr. Stewart for follow up.  (*Id.* at 277.)  Nguyen reported increased myofascial pain and that Plaquenil did not seem to be helping much.  (*Id.*)  Most of her pain was in her shoulders, hips, knees, and back.  (*Id.*)  Nguyen told Dr. Stewart she was stiff for hours and had disrupted sleep.  (*Id.*)  She reported working as a legal assistant at a law firm and receiving mental health treatment.  (*Id.*)  Nguyen endorsed fatigue and thought depression was the cause.  (*Id.*)  On examination, Dr. Stewart found Nguyen comfortable and well-appearing, with tenderness of the paraspinals, left elbow, left hip, and bilateral knees.  (*Id.* at 277-78.)  Dr. Stewart started Nguyen on Naprosyn and Neurontin.  (*Id.* at 277.)

On July 11, 2019, Nguyen saw Amelia Baffa, PMHNIP-BC, for a psychiatric evaluation.  (*Id.* at 372, 378.)  Nguyen reported her depression was her biggest issue and she wanted to get it under control.  (*Id.* at 372.)  She endorsed pervasive sadness, hopelessness, worthlessness, low self-esteem, impaired memory and concentration, low energy, and low motivation.  (*Id.* at 373.)  She also experienced anxiety and panic, but her anxiety did not impede her ability to function.  (*Id.*)  Nguyen also complained of worry, racing thoughts, and irritability.  (*Id.*)  She denied impulsivity, irritability, violence, audiovisual hallucinations, and delusions.  (*Id.*)  On examination, Baffa found average activity, average eye contact, clear speech, logical thought process, normal thought content, normal perceptions, good insight and judgment, good attention and concentration with minimal distractibility, appropriate affect, moderate anxiety, and moderate depression.  (*Id.* at 374-75.)  Baffa found Nguyen's major depressive disorder, panic disorder, and unspecified trauma and stressor-related disorder to be "stable or improved."  (*Id.* at 376.)  Baffa adjusted Nguyen's medications.  (*Id.*)

On July 27, 2019, Nguyen completed an Adult Function Report. (*Id.* at 208-15.) She reported she could not work consistently because of her condition. (*Id.* at 208.) She experienced constant fatigue with full-body aches and brain fog, which made it difficult for her to concentrate. (*Id.*) She also struggled to write or type because of the pain in her arms, wrists, and hands. (*Id.*) She spent a typical day waking up, taking her medication, taking care of her dogs, and assessing how she felt that day; if she felt good, she may do light housework or walk her dogs around the block before trying to cook. (*Id.* at 209.) She sleeps more now. (*Id.*) She has no problem with personal care. (*Id.*) She prepares simple meals two to three times a week, and it takes her 30 minutes to an hour. (*Id.* at 210.) She used to cook daily, but she doesn't have the energy to do so now. (*Id.*) She can do laundry, light cleaning, and dishes. (*Id.*) She can water plants. (*Id.*) She sometimes needs motivation to do these things, and she needs help often with cleaning or the dishes since these activities require more use of her hands than she can perform. (*Id.* at 210.) She cannot do yard work. (*Id.* at 211.) She goes outside one to two times a day with her dogs. (*Id.*) Her panic disorder makes it hard for her to go out alone, but she manages to do it. (*Id.*) She shops in the store for groceries for 30 minutes once a week. (*Id.*) She can pay bills, count change, handle a savings account, and use a checkbook/money order. (*Id.*) She watches TV daily. (*Id.* at 212.) She rarely reads, listens to music, plays the trumpet, and walks in the park. (*Id.*) She cannot hold a book for long now. (*Id.*) She spends time with others by going to dinner and the movies, and she talks to others on the phone or by text. (*Id.*) She visits her grandfather's house weekly. (*Id.*) She often cancels plans because of not feeling well. (*Id.* at 213.) Her symptoms affect her ability to bend, stand, reach, sit, and kneel. (*Id.*) She could walk a half mile to a mile before needing to rest for 10 minutes. (*Id.*) She can pay attention for 10 minutes. (*Id.*) She must read and reread the directions while doing a task. (*Id.*) She cannot follow spoken instructions well. (*Id.*) Stress worsens her fatigue. (*Id.* at 214.) She does not handle changes in routine well. (*Id.*) She has felt worse lately. (*Id.* at 215.) She was able to work full-time in December but needed to drop

8

down to full-time and has been unable to return to full-time work because of her health and her symptoms. (*Id.*)

On August 6, 2019, Nguyen saw Inderprit Singh, M.D, and reported joint pain, morning fatigue, achiness as the day went on, neck pain, mid and low back pain, bilateral shoulder pain, wrist and hand pain with activity, bilateral hip pain, and bilateral knee pain.  (*Id.* at 395.)  Nguyen told Dr. Singh the worst pain was in her midback and her legs and thighs.  (*Id.*)  Nguyen denied give away sensation in her knees but endorsed give away sensation in her ankles.  (*Id.*)  On examination, Dr. Singh found low grade tenderness, dermatographism, flushing, and decreased saliva pooling.  (*Id.* at 397.)  Dr. Singh assessed polyarthralgia and noted "possible Fibromyalgia vs Undifferentiated connective tissue disease," as well as possible early Sjogren's syndrome.  (*Id.* at 397-98.)  Dr. Singh also assessed fatigue, dizziness, flushing, panic disorder, and migraines.  (*Id.* at 399.)

On August 12, 2019, Nguyen saw Elizabeth Ritts, PT, for a physical therapy evaluation.  (*Id.* at 415.)  Nguyen endorsed worsening recurrent dizziness, generalized body pain, and neurocognitive fatigue. (*Id.*)  Nguyen told Ritts she was working part-time as a legal assistant, but she was having trouble working because of her symptoms and was considering applying for disability.  (*Id.*)  Nguyen's current rheumatologist questioned her fibromyalgia diagnosis and was following up with more testing to confirm an autoimmune diagnosis.  (*Id.*)  Nguyen told Ritts she struggled to perform all activities of daily living and housework tasks.  (*Id.* at 416.)  She reported working full time until October 2018, when her stress and worsening symptoms caused her to quit.  (*Id.*)  She got another job working full-time, and then dropped to part-time.  (*Id.*)  She stated she was still on the books as a part-time legal assistant.  (*Id.*)  She told Ritts she had a lot of brain fog and difficulty concentrating.  (*Id.*)  Nguyen also endorsed intermittent tingling in her face and extremities that Ritts could not replicate during examination.  (*Id.* at 415.)  Ritts determined Nguyen presented with decreased activity tolerance, weakness, poor postural control, joint

hypermobility, chronic pain, and subjective reports of dizziness.  (*Id.*)  Ritts recommended physical therapy twice a week for eight weeks.  (*Id.*)

On August 22, 2019, Nguyen saw PMHNP-BC Baffa for medication management.  (*Id.* at 1103, 1108.)  Nguyen reported that her medications for her mental impairments had been "helpful and well tolerated."  (*Id.* at 1103.)  Nguyen told Baffa she had a "stable mood with low anxiety and high depression."  (*Id.* at 1104.)  She denied problems with sleep, diet, and appetite, and denied impulsivity, violence, irritability, audiovisual hallucinations, and delusions.  (*Id.*)  On examination, Baffa found slowed activity, average eye contact, clear speech, logical thought process, normal thought content, normal and intact perceptions, good insight and judgment, good attention and concentration with minimal distractibility, abnormal language, moderate depression, and appropriate affect.  (*Id.* at 1104-05.)  Baffa noted Nguyen's major depressive disorder, panic disorder, and unspecified trauma and stressor related disorder were "stable or improved."  (*Id.* at 1106.)  Baffa adjusted Nguyen's medications.  (*Id.*)

On September 11, 2019, Nguyen saw Katherine Wilder, LPC, for individual psychotherapy.  (*Id.* at 1100-02.)  Nguyen reported continuing depression and some anxiety and told Wilder she had been feeling "empty" and "blah."  (*Id.* at 1100.)  She was sad more days than not.  (*Id.*)  She also endorsed a lack of motivation.  (*Id.*)  On examination, Wilder found normal activity and eye contact, normal speech, avoidant behavior, anxious mood, fair insight and judgment, and logical thought process.  (*Id.*)

On October 8, 2019, Ritts recommended Nguyen be discharged from physical therapy because she had not returned to therapy or scheduled additional appointments.  (*Id.* at 423.)  Ritts noted that at the last visit on September 9, 2019, Nguyen "was progressing slower than expected toward functional goals based on home exercise program compliance and appointment compliance."  (*Id.*)  Ritts was "[u]nable to formally assess goal achievement due to non-compliance with therapy plan of care."  (*Id.*)

That same day, Nguyen saw Dr. Singh for follow up.  (*Id.* at 401.)  Nguyen reported a little achiness, as well as pain in her knees, back, and shoulders.  (*Id.*)  She also endorsed intermittent wrist and ankle pain.  (*Id.*)  She complained of brain fog that prevented her from thinking clearly; her mind felt "foggy," and it was worse with stress.  (*Id.*)  Nguyen told Dr. Singh her headaches had been okay for the most part; she had had a few migraines in the last few weeks.  (*Id.*)  Her headaches were worse with weather changes.  (*Id.*)  She used Maxalt, which sometimes did not help.  (*Id.*) Dr. Singh prescribed Singulair to see if it helped with Nguyen's migraines.  (*Id.* at 405.)

On March 12, 2020, Nguyen saw Dr. Singh for follow up after messaging his office the day before and relaying information about her symptoms.  (*Id.* at 429.)  Nguyen endorsed continued exhaustion where she could only stay awake for an hour or so before needing to sleep for a few hours.  (*Id.*) She then usually slept through the night.  (*Id.*)  Nguyen reported Methotrexate did not seem to be helping, and she had developed "painful, bleeding nasal ulcers" since starting it.  (*Id.* at 430.)  She also endorsed constant brain fog, morning stiffness lasting one to two hours, upper back and neck pain, and knee and hip pain. (*Id.*)  On examination, Dr. Singh found a bleeding nasal ulcer, flushed face, and tenderness.  (*Id.* at 431.) Nguyen's diagnoses included polyarthralgia, undifferentiated connective tissue disease, fibromyalgia, benign hypermobility syndrome, brain fog, dizziness, panic disorder, anxiety and depression, facial tingling, and migraines.  (*Id.* at 433-34.)  Dr. Singh ordered bloodwork to assess any hematologic and hepatic side effects of Methotrexate.  (*Id.* at 435.)

On June 25, 2020, Nguyen saw Dr. Singh for follow up.  (*Id.* at 447.)  She reported doing okay and that her aches and pains remained the same; they had not improved since she first started seeing Dr. Singh. (*Id.*)  She endorsed back, neck, and shoulder pain but denied elbow, wrist, hand, hip, ankle, and foot pain. (*Id.*)  She continued to experience brain fog.  (*Id.*)  She got headaches at times on the right side of her face and in her forehead that were "migraine type."  (*Id.*)  Nguyen also complained of nausea with eating,

11

abdominal pain, and cramps.  (*Id.*)  She told Dr. Singh she had lost weight, but she did not know how much.  (*Id.*)  She also experienced occasional diarrhea.  (*Id.* at 448.)  She got lightheaded when going from sitting to standing, although she denied passing out.  (*Id.*)  Dr. Singh started Nguyen on sulfasalazine.  (*Id.* at 449.)  He noted Nguyen's migraines were better.  (*Id.* at 451.)

On July 21, 2020, Nguyen saw Carol Lewis, M.D., for medication management.  (*Id.* at 1083-84, 1087.)  Nguyen reported continued depressed mood with no improvement on increased Fluoxetine.  (*Id.* at 1084.)  She wanted to try a new medication.  (*Id.*)  She felt tired all the time, but her anxiety had been okay.  (*Id.*)  On examination, Dr. Lewis found average activity, average eye contact, clear speech, logical thought process, good insight and judgment, good attention and concentration with minimal distractibility, "grossly intact" language, depressed mood, and appropriate affect.  (*Id.* at 1084-85.)  Dr. Lewis noted Nguyen's major depressive disorder was "stable or improved."  (*Id.* at 1085.)  Dr. Lewis adjusted Nguyen's medications.  (*Id.* at 1086.)

On August 27, 2020, Nguyen saw Dr. Singh for follow up.  (*Id.* at 968.)  Nguyen reported she was tired, her nausea and vomiting were better, and she had intermittent headaches.  (*Id.*)  She told Dr. Singh she had a nose ulcer that had since resolved.  (*Id.*)  She endorsed morning stiffness that lasted one to two hours, achiness throughout the day, jaw pain on the left once a month, neck pain that radiated to the shoulders, low back pain, shoulder, elbow, wrist, and hand pain, hip and knee pain, and intermittent ankle pain.  (*Id.*)  She also complained of brain fog that prevented her from thinking well.  (*Id.*)  She could not grasp a book anymore.  (*Id.*)  Nguyen reported her anxiety and depression were controlled.  (*Id.*)  While her migraines were better when she started Topamax, they were now coming back.  (*Id.* at 969.)  Dr. Singh ordered a tilt table test.  (*Id.* at 972.)

A September 2020 tilt table test revealed borderline accentuated postural tachycardia.  (*Id.* at 935.)

On October 8, 2020, Nguyen saw Julie Ashkar, PHMNP-BC, for medication management. (*Id.* at 1076-77, 1081.) She reported her mood had been "'okay'" and that she was feeling depressed and irritable. (*Id.* at 1077.) Nguyen stated she only felt anxious when she was in the car. (*Id.*) She denied paranoia, hallucinations, racing thoughts, and suicidal and homicidal ideation. (*Id.*) She napped during the day. (*Id.*) Nguyen felt she hadn't noticed much of a difference since starting Lexapro and wanted to try a new medication. (*Id.*) On examination, Ashkar found average activity, average eye contact, clear speech, logical thought process, intact associations, normal thought content, normal perceptions, fair insight and judgment, good attention and concentration with minimal distractibility, "grossly intact" language, appropriate affect, mild anxiety, moderate depression, and irritability. (*Id.* at 1077-78.) Nguyen reported bathing every other day. (*Id.* at 1078.) Ashkar noted Nguyen's major depressive disorder was "stable or improved." (*Id.* at 1079.) Ashkar adjusted Nguyen's medications. (*Id.*)

On March 18, 2021, Nguyen saw Dr. Singh for follow up. (*Id.* at 1157.) She reported fatigue was her biggest issue. (*Id.*) While Lyrica improved her pain somewhat, it made her fatigue worse. (*Id.*) She was tired all the time. (*Id.*) Nguyen thought her dizziness was worse than before, and she was seeing an ENT for her dizziness. (*Id.*) She endorsed sharp pain in her ankle, along with a giveaway sensation. (*Id.*) She also complained of pain in her calves, thighs, and feet. (*Id.*) Dr. Singh noted Nguyen had "failed all DMARD, hold off [on] any treatment with any DMARD or prednisone." (*Id.* at 1158.)

On June 3, 2021, Nguyen saw Dr. Singh for follow up. (*Id.* at 924.) Nguyen told Dr. Singh she was tired that day. (*Id.*) Nguyen reported "24/7" stiffness in her hip and buttock, constant elbow pain, foot pain with ambulation and that made it difficult to get out of bed in the morning, improved vertigo, intermittent dizziness, improved flushing episodes, and numbness and tingling in the hands, feet, and face. (*Id.*) Dr. Singh stated, "fibromyalgia is there, I think underlying Sjogren is main component at present." (*Id.* at 926.) Dr. Singh noted neurocognitive testing was pending because of insurance issues. (*Id.* at 927.)

13

On July 16, 2021, Nguyen saw Ashkar for medication management.  (*Id.* at 1046-47, 1051.) Nguyen reported being "'about the same'" since her last appointment.  (*Id.* at 1047.)  She described her mood as upset and unmotivated, and she endorsed worsening depression, irritability, and anxiety.  (*Id.*) Nguyen told Ashkar she had racing thoughts a few times a day.  (*Id.*)  She denied audiovisual hallucinations, paranoia, and suicidal/homicidal ideation.  (*Id.*)  Nguyen reported improved sleep and a good appetite.  (*Id.*)  She told Ashkar she was trying to use her exercise bike and was taking care of her dogs.  (*Id.*)  On examination, Ashkar found clear speech, racing thought process, intact associations, normal thought content, normal perceptions, fair insight and judgment, good attention and concentration with minimal distractibility, "grossly intact" language, and moderate anxiety, depression, and irritability. (*Id.* at 1047-48.)  Ashkar noted Nguyen reported bathing three times a week.  (*Id.* at 1048.)  Ashkar found Nguyen's major depressive disorder to be "stable or improved" and adjusted her medications.  (*Id.* at 1049.)

On August 20, 2021, Nguyen saw Ashkar for medication management.  (*Id.* at 1039-40, 1044.) Nguyen reported some improvement in her mood since her last appointment, and her depression and anxiety had decreased.  (*Id.* at 1040.)  She told Ashkar she still got anxious when riding in a car.  (*Id.*) Nguyen denied racing thoughts, anger, paranoia, hallucinations, and suicidal/homicidal ideation.  (*Id.*) She reported spending time at home, visiting family, and walking her dog.  (*Id.*)  She stated she had recently gone on vacation to Michigan and enjoyed it.  (*Id.*)  On examination, Ashkar found average activity, average eye contact, clear speech, logical thought process, intact associations, normal thought content, normal perceptions, fair insight and judgment, good attention and concentration with minimal distractibility, "grossly intact" language, constricted/blunted affect, mild anxiety, and moderate depression.  (*Id.* at 1040-41.)  Ashkar noted Nguyen said she bathed two to three times a week.  (*Id.* at

14

1041.)  Ashkar determined Nguyen's major depressive disorder was "stable or improved" and continued her medications.  (*Id.* at 1042.)

On September 20, 2021, Nguyen completed another Adult Function Report.  (*Id.* at 800-07.)  Her impairments cause chronic pain, chronic joint pain, chronic migraines, brain fog, and gastrointestinal issues, and she cannot work as a result.  (*Id.* at 800.)  She also has trouble thinking, comprehending, and moving at least four days a week.  (*Id.*)  On a typical day, she wakes up and lets her dogs out; she cannot walk them, so she lets them out in the yard throughout the day.  (*Id.* at 801.)  She eats something and then tries to do light chores.  (*Id.*)  She must take a nap after that.  (*Id.*)  She tries to read or watch TV.  (*Id.*)  She struggles to bend to put on pants or raise her arms overhead to put on a shirt.  (*Id.*)  Bathing causes fatigue, and she cannot do anything else that day.  (*Id.*)  She has a hard time bending to shave and gripping a razor.  (*Id.*)  She cannot cook for herself; she can only microwave things.  (*Id.*)  She must use the toilet several times a day because of urgent diarrhea.  (*Id.*)  She needs to set alarms to remind her to take her medications.  (*Id.* at 802.)  She tries to do light cleaning, such as dusting, but she needs to take long breaks because of her fatigue and joint pain.  (*Id.*)  She goes outside as little as possible because heat or cold causes fatigue, headaches, rashes, hives, easy sunburn, and blistering.  (*Id.* at 803.)  She cannot go out alone because of vertigo and regular dizziness.  (*Id.*)  Sneezing or laughing can cause her to pass out.  (*Id.*)  She gets panic attacks if she drives.  (*Id.*)  Brain fog also makes it difficult to drive.  (*Id.*)  Her husband does all the shopping.  (*Id.*)  She cannot pay bills, count change, handle a savings account, or use a checkbook/money order.  (*Id.*)  She reads and watches TV.  (*Id.* at 804.)  She does not read often or well because of problems holding a book and concentrating.  (*Id.*)  She can no longer watch foreign content on TV or concentrate.  (*Id.*)  She spends time with others once or twice a month.  (*Id.*)  She goes to her grandfather's house weekly to visit with him.  (*Id.*)  She no longer spends time with her friends because of low energy.  (*Id.*)  She cannot lift.  (*Id.* at 805.)  Any activity requiring the use of her arms or hands causes

15

her a lot of pain.  (*Id.*)  Her brain fog affects her memory and comprehension.  (*Id.*)  She can walk for 10-20 minutes before she needs to rest for 10-20 minutes.  (*Id.*)  She can pay attention for 20 minutes.  (*Id.*)  She does not follow written or spoken instructions well.  (*Id.*)  She does not handle stress well; it causes physical symptoms such as brain fog, facial flushing, and hives.  (*Id.* at 806.)  She does not handle changes in routine well, as changes are difficult for her to remember or comprehend.  (*Id.*)  She has a panic disorder, and she has a fear of cars.  (*Id.*)  Going to the doctor causes a lot of stress and triggers a panic attack.  (*Id.*)  Any physical or mental activity causes her to need to rest or nap.  (*Id.* at 807.)  It is getting harder for her to concentrate on anything, such as what others say, books, and movies.  (*Id.*)

On December 6, 2021, Nguyen saw Dr. Singh for follow up.  (*Id.* at 1134.)  She reported her migraines were worse, as was her nausea.  (*Id.*)  She stated she was getting migraines multiple times a week.  (*Id.*)  Maxalt was not helping, and she could not take more than two a week.  (*Id.*)  Nguyen told Dr. Singh her migraines started on the left side of her face and were accompanied by phonophobia and photophobia.  (*Id.*)  Head movement triggered her migraines.  (*Id.*)  Nguyen also reported her aches and pains were worse and she had seen no improvement with Elavil.  (*Id.*)  She also endorsed diffuse joint pains and muscle pain.  (*Id.*)  She experienced nausea and vomiting even on days with no migraines, and she also had bowel issues and stomach cramps.  (*Id.*)  Nguyen also reported "[c]onstant itchiness of her eyes and nose" and "constant dry mouth."  (*Id.* at 1135.)  Dr. Singh stopped Plaquenil to see if it was causing Nguyen's gastrointestinal issues and referred her to pain management since she had failed all therapy.  (*Id.* at 1136, 1138.)

On January 12, 2022, Nguyen saw Jennifer Theis, PA-C, by telehealth for follow up of her colonoscopy.  (*Id.* at 1232.) Nguyen reported continued "almost daily" diarrhea, two to three times a day, as well as intermittent nausea and abdominal pain.  (*Id.*)  Theis told Nguyen her colonoscopy and biopsies

16

were normal.  (*Id.* at 1234.)  Theis ordered more bloodwork and prescribed Bentyl as needed for pain and diarrhea.  (*Id.*)  Nguyen's diagnoses consisted of functional diarrhea and nausea.  (*Id.*)

On February 3, 2022, Nguyen saw Ashkar for medication management.  (*Id.* at 1479-80, 1484.) Nguyen reported not doing well since her last appointment, as her anxiety and panic attacks had increased, and she was unsure why.  (*Id.* at 1480.)  She told Ashkar her depression had decreased since starting Lamictal, and while her mood was still "'up and down,'" it had been getting more stable.  (*Id.*)  Nguyen reported spending time with family and exercising at the Wellness Center.  (*Id.*)  She endorsed increased migraines and relayed that she had an appointment with pain management the following week.  (*Id.*)  On examination, Ashkar found clear speech, logical thought process, intact associations, normal thought content, normal perceptions, fair insight and judgment, good attention and concentration with minimal distractibility, moderate anxiety, and moderate depression.  (*Id.* at 1480-81.)  Nguyen reported bathing four times a week.  (*Id.* at 1481.)  Ashkar noted that Nguyen's major depressive disorder was "stable or improved" while her panic disorder was worsening.  (*Id.* at 1482.)  Ashkar adjusted Nguyen's medications.  (*Id.*)

Diagnostic imaging of the cervical spine, lumbar spine, and thoracic spine taken on September 22, 2022 revealed mild degenerative changes and probable spondylolysis.  (*Id.* at 1625-30.)

On September 29, 2022, Nguyen had a telehealth appointment with Karen Dawn Hodakievic, APRN, CNP, regarding neck and back pain that varied in intensity.  (*Id.* at 1613-14.)  Nguyen rated her pain as a 5/10.  (*Id.* at 1614.)  She reported acupuncture helped the day she received treatment but did not last beyond that.  (*Id.*)  Nguyen told Hodakievic the pain was annoying and frustrating; it came and went, but it was present 75% of the time.  (*Id.*)  She denied "frequent or significant headaches."  (*Id.*)  Nguyen's diagnoses consisted of chronic migraine without aura, without status migrainosus, not intractable, fibromyalgia, chronic low back pain, and carpal tunnel syndrome of the right wrist.  (*Id.*)  Hodakievic

17

continued Zanaflex and acupuncture.  (*Id.*)  Hodakievic recommended Nguyen follow up in two to three months.  (*Id.*)

On November 27, 2022, Dr. Singh completed a Physical Medical Source Statement based on his treatment of Nguyen's undifferentiated connective tissue disease, POTS, fibromyalgia and cognitive dysfunction, hypermobility spectrum disorder, anxiety, and depression.  (*Id.* at 1508-11.)  Nguyen's symptoms included brain fog, migraines, joint pain, diffuse body pain, and fatigue.  (*Id.* at 1508.) Dr. Singh opined Nguyen could sit for 15 minutes at a time and stand for 15 minutes at a time.  (*Id.* at 1509.) She could sit and stand for less than two hours total in an eight-hour workday.  (*Id.*)  She would need to walk around for five minutes every 15 minutes.  (*Id.*)  She would need additional 15-minute rest breaks during the day because of her muscle weakness, pain/paresthesias, numbness, and chronic fatigue.  (*Id.*) She would be absent more than four days a month.  (*Id.* at 1510.)  She was getting "20 plus migraines per month."  (*Id.*)  She would be off-task 25% or more of the workday, and she was incapable of even low stress work.  (*Id.*)  In support of his opinion, Dr. Singh attached the treatment notes October 10, 2022.  (*Id.* at 1508, 1512-21.)  At that visit, Nguyen reported having two to three migraines per week that lasted two days at a time.  (*Id.* at 1512.)  Her brain fog was worse with migraines.  (*Id.*)

On January 26, 2023, Nguyen underwent right carpal tunnel release surgery.  (*Id.* at 1544-45.)

On July 28, 2023, Dr. Syeda Asshiya Farheen completed a Mental Impairment Questionnaire.  (*Id.* at 1638-39.)  Nguyen's diagnoses included moderate major depressive disorder, panic disorder with agoraphobia, and fibromyalgia.  (*Id.* at 1638.)  Dr. Farheen opined that Nguyen was unable to meet competitive standards in the following areas: carry out very short and simple instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; manage regular attendance and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being

18

distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember detailed instructions; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others.  (*Id.* at 1638-39.)  Dr. Farheen further opined Nguyen would be absent four days a week and off-task 60-70% of the workday.  (*Id.* at 1639.)

On November 15, 2023, after the hearing, Nguyen saw Michelle Evans, APRN, for a mental consultative examination.  (*Id.* at 1641-46.)  Nguyen told Evans she struggled with cooking and cleaning because of her major depressive disorder and physical symptoms, but she could shower and dress herself. (*Id.* at 1644.)  She could drive, but her husband drove because of her panic attacks.  (*Id.*)  She had low motivation and struggled to get out bed.  (*Id.*)  She endorsed occasional crying spells and angry outbursts. (*Id.*)  On examination, Evans found appropriate hygiene, intact speech, flat affect, adequate concentration, and anxiety.  (*Id.* at 1645.)  Evans noted fidgeting and the ability to make eye contact.  (*Id.*)  When asked for a functional assessment of Nguyen's abilities, Evans opined Nguyen had "[l]imited concentration and migraines related to anxiety, stress induced physical symptoms, reports 'brain fog.'"  (*Id.* at 1643.)  In evaluating Nguyen's functional abilities, Evans opined Nguyen reported she struggled with verbal instruction and "written instruction becomes 'jumbled,'" her concentration was impaired, she was able to work with peers, although she often took anxiety medication in order to leave the house, and she struggled with a competitive setting.  (*Id.* at 1643-44.)

On December 10, 2023, Evans completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) and opined Nguyen had mild limitations in her ability to: understand and remember simple instructions; carry out simple instructions; make judgments on simple work-related

19

decisions; interact appropriately with the public; interact appropriately with supervisors; and interact appropriately with coworkers. (*Id.* at 1649-51.) Evans further opined Nguyen had moderate limitations in her ability to: understand and remember complex instructions; carry out complex instructions; make judgments on complex work-related decisions; and respond appropriately to usual work situations and to changes in a routine work setting. (*Id.* at 1649-50.) Evans further opined Nguyen could concentrate on simple tasks. (*Id.* at 1650.) She did not adjust to change and struggled with adaptation. (*Id.*)

## C.     State Agency Reports

### 1.         Mental Impairments

On September 7, 2019, Deryck Richardson, Ph.D., reviewed the file and opined Nguyen had no impairment in her ability to understand, remember, or apply information but had moderate impairments in her ability to interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. (*Id.* at 85.) She could "sustain concentration and persistence when tasks are simple to moderately detailed, are of short to moderate duration, and expected pace is not rapid." (*Id.* at 90.) She could interact in situations that did not require more than superficial contact with supervisors, coworkers, and the general public. (*Id.*) Nguyen's "mood disturbance may interfere with her adaptation with worsening of symptoms." (*Id.* at 91.) She could "work in a stable setting with predictable expectation and infrequent job related changes." (*Id.*)

On January 17, 2020, on reconsideration, Cindy Matyi, Ph.D., opined Nguyen had a mild limitation in her ability to understand, remember, or apply information, but otherwise affirmed Dr. Richardson's findings. (*Id.* at 100-01, 105-06.)

On November 16, 2021, Cynthia Waggoner, Psy.D., reviewed the file and opined that since a federal court case was pending, the ALJ's RFC could not be adopted. (*Id.* at 553-54.) Dr. Waggoner determined Nguyen's mental impairments were not severe. (*Id.* at 553.)

### 2. Physical Impairments

On August 29, 2019, Sai Nimmagadda, M.D., reviewed the file and opined Nguyen could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. (*Id.* at 87, 89.) Her ability to push and/or pull was unlimited, other than shown for lift and/or carry. (*Id.* at 87.) She must avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases, poor ventilation, etc., and she must avoid even moderate exposure to hazards. (*Id.* at 87-88.)

On January 24, 2020, on reconsideration, Anton Freihofner, M.D., affirmed Dr. Nimmagadda's findings. (*Id.* at 102-04.)

On November 16, 2021, Yacob Gawo, M.D., reviewed the file and opined that since a federal court case was pending, the ALJ's RFC could not be adopted. (*Id.* at 552.) Dr. Gawo determined Nguyen's physical impairments were "not severe as her PE findings are essentially normal." (*Id.* at 552.)

### D. Hearing Testimony

During the June 5, 2023 hearing, Nguyen testified to the following:

- She has a driver's license. (*Id.* at 514.)

- Her migraines and her undifferentiated connective tissue disorder have gotten worse since her last hearing. (*Id.* at 515.)

- She gets migraines 20-25 days a month. (*Id.*) They usually last four to five days. (*Id.*) She gets four to five migraines a month lasting 25 days. (*Id.* at 516.) Weather changes are a big migraine trigger for her. (*Id.*) She takes Nurtec when her migraines occur if it's early enough. (*Id.*) She also receives a preventative IV infusion every three months. (*Id.*) She has only received one infusion so far; she has not seen any benefit yet. (*Id.* at 517.) Her next infusion is in July. (*Id.*) She will try Botox next, which is her last resort because she has tried several different treatments. (*Id.*) When she gets a migraine, she experiences sensitivity to lights, sounds, and smells, and moving makes her head hurt worse. (*Id.* at 517-18.) She sometimes gets nauseous. (*Id.* at 518.) She also experiences brain fog and concentration issues when she has a migraine, and then it is like she has a migraine hangover before she goes right into another migraine. (*Id.* at 526.) When she has a migraine, she has to stay in a dark room with no screens; if she wants to listen to music, it must be turned down low. (*Id.* at 527.) She cannot walk around because it makes the pain worse. (*Id.*) Her head

pounds, and she cannot read or concentrate or do things around the house.  (*Id.*)  She tries ice and heat as well, which helps for a half hour at the most before the pain returns.  (*Id.*)  She is in the first stages of a migraine now.  (*Id.*)

- Her connective tissue disorder causes a lot of muscle and joint pain.  (*Id.* at 518.)  Her joints and the muscles around them hurt and it is hard for her to move them sometimes.  (*Id.*)  Her knees, hip, elbows, and wrists hurt the most.  (*Id.*)  She takes Plaquenil, a muscle relaxer, and Gabapentin, which provide minimal relief.  (*Id.* at 519.)

- She experiences fatigue, as well as dizziness and lightheadedness.  (*Id.* at 520.)  She gets dizzy when she changes position, but it also sometimes comes out of nowhere.  (*Id.*)

- She also has irritable bowel syndrome.  (*Id.* at 521.)  She experiences diarrhea two to three times a day.  (*Id.*)  She has tried changing her diet and her gastroenterologist prescribed a medication that did not help her much.  (*Id.*)

- Her panic disorder has been worse lately.  (*Id.* at 523.)  She is having more panic attacks; they are occurring a few times a day.  (*Id.*)  She sees a psychiatrist, and she is talking to her psychiatrist about seeing a therapist as well.  (*Id.*)  She has seen a therapist in the past and it wasn't much help.  (*Id.*)  She takes medication for her mental conditions, and they help somewhat.  (*Id.* at 524.)

- She wakes up a few times during the night and takes one to two naps a day.  (*Id.*)

- She does not do laundry, and she has a hard time cleaning.  (*Id.* at 525.)  She can do the dishes and cook on occasion, but it depends if she has a migraine.  (*Id.*)  She does not go out to run errands or shop unless her husband is with her.  (*Id.*)  She visits her grandfather and her mother once a week unless she is having a bad day.  (*Id.*)

- She likes to read, spend time with her dogs, and play video games, but those are hard to do, and she can't do them if she has a migraine.  (*Id.*)  She also has difficulty concentrating and retaining information.  (*Id.*)

During the June 5, 2023 hearing, neurologist and independent medical expert Ronald Koenig, M.D., testified as follows:

- He was able to gather enough information from the file to develop an opinion regarding Nguyen's case.  (*Id.* at 529.)  It would have been helpful to see her treating neurologist's opinion, but otherwise there was no other information that would have better positioned him to offer an opinion in this case.  (*Id.*)

- When asked by the ALJ whether there were severe medically determinable impairments in Nguyen's case, Dr. Koenig testified that his "feeling, based upon the records as well as [Nguyen's] testimony, is that you have the wrong specialist reviewing the case. And I'll expand on that now." (*Id.* at 530.)  Dr. Koenig continued:

22

In medicine, including neurology, we like to have one diagnosis or one complaint. In Ms. Nguyen's case, as you've already outlined, we have migraines. We have fibromyalgia. We have sleep disorder. We have dizziness. We have low back pain. We have diarrhea. We have nausea, vomiting. The list goes on and on. And that's bothersome in evaluating her complaints as to how many, on an objective basis, and you say, oh, yes, she has migraines. But how much of all of this is really related to the diagnosis of major depression and panic attacks? And in reviewing this, I can go step by step why she doesn't have certain diagnoses. For example, the diagnosis of POTS she did have the tilt test, which was borderline. In general POTS occurs with dizziness with change of position. It's an orthostatic situation that is a change in blood pressure and heartrate, related to postural changes. In her case, she's complaining of this all the time. Generally, migraines, they occur up to 15 times or more a month, but they're one to two-day events. In her case, she really has continuous migraines. Yet even when she's not having her migraines, she still complains of nausea, vomiting, and diarrhea, which she attributes to the migraines. That's, from my standpoint, it doesn't make sense to me. And so with her fibromyalgia, she has chronic pain. We don't have identification of the trigger points. Her -- on -- where was it? 8F is her physical therapy evaluation. There's a question of the rheumatologist even finding anything compatible with joint disease, or findings of joint problems, fibromyalgia. This concept of brain fog is interesting, but I would refer that to a psychiatrist to confirm whether or not - what that means, or whether or not it even exists. So my problem, in making an evaluation for you, or making a diagnosis for you is as I've stated. I just -- it's all functional, based on her complaints. While I appreciate that she's getting medicine like Plaquenil and IV medicine for migraines, I just -- as the saying goes, there's no there there. And so from my standpoint, I can't give you a neurological diagnosis. And I am aware of 19-4p, evaluating cases involving primary headache disorders. I am aware of 12-2p, evaluation of fibromyalgia. And I've considered those. But I do not -- cannot substantiate those diagnoses.

(*Id.* at 530-31.)

- He agreed with the ALJ that "without further investigation as to sort of the nature and linkages between the different symptoms and the potential different diagnoses, that [he didn't] feel comfortable setting forth an opinion with regard to Ms. Nguyen's condition." (*Id.* at 532.)

- He agreed with the ALJ that he was "not prepared to say that [Nguyen] meets a listing or functionally equals a listing with regard to her migraine headaches," nor was he comfortable stating "she absolutely does not meet or functionally equal a listing either." (*Id.* at 533.)

- He agreed with the ALJ that he felt "improperly equipped to render an opinion whatsoever." (*Id.*)

23

- The question was how much of Nguyen's impairments were "related to a psychiatric diagnosis"; while he is a neurologist, he has never practiced psychiatry and is not a psychiatrist. (*Id.*)

- The ALJ asked if it was a fair statement "whether, if the question was does she cross that threshold to providing the evidence necessary for meeting or functionally equal a listing, you cannot deem that burden to have been met, based upon what you've reviewed, what you've heard through testimony, all the information that's been provided to you with regard to Ms. Nguyen's case." (*Id.* at 533-34.)  Dr. Koenig answered that was correct. (*Id.* at 534.)

- He agreed with Nguyen's counsel that the "most prudent" path going forward would be to retain the services of a psychiatric medical expert. (*Id.*)

The ALJ informed the VE that Nguyen had past relevant work as a general office clerk, social service aide, and resident supervisor. (*Id.* at 513.)  The ALJ then posed the following hypothetical question:

> And for my first hypothetical, I'd like you to presume an individual the same age, educational background, and work experience as the Claimant. I'd like you to presume the individual can perform the full range of light work, subject to the following limitations. Specifically, the individual would be limited to frequent handling or fingering. The induvial could occasionally climb ramps or stairs -- I'm sorry. Can climb ramps or stairs, but never climb ladders, ropes, of scaffolds. The individual would be limited to occasional balancing, stooping, kneeling, crouching, or crawling. The individual would never be exposed to unprotected heights, hazardous machinery, or commercial driving, and would avoid concentrated exposure to humidity, to extreme cold or heat, or to dust, odors, fumes, or pulmonary irritants. The individual would be limited to the performance of simple, routine tasks, and simple work-related decisions, and limited to frequent interactions with supervisors, co-workers, or the general public. The individual would tolerate few changes in a routine work setting. Could such an individual perform the past work of the Claimant?

(*Id.* at 537-38.)

The VE testified the hypothetical individual would not be able to perform Nguyen's past work as a general office clerk, social service aide, and resident supervisor. (*Id.* at 538.)  The VE further testified the hypothetical individual would be able to perform other representative jobs in the economy, such as marker, garment sorter, and bagger. (*Id.*)

24

### III.   STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if the claimant: (1) had a disability; (2) was insured when the claimant became disabled; and (3) filed while the claimant was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that they are not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that they suffer from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent the claimant from doing their past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's

25

impairment does prevent the claimant from doing their past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Nguyen was insured on the alleged disability onset date, January 1, 2018, and remained insured through September 30, 2022, the date last insured ("DLI").  (Tr. 480-81.) Therefore, in order to be entitled to POD and DIB, Nguyen must establish a continuous twelve-month period of disability commencing between these dates.  Any discontinuity in the twelve-month period precludes an entitlement to benefits.  *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

### IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on September 30, 2022.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2018 through her date last insured of September 30, 2022 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments: Obesity, Fibromyalgia/Polyarthralgia, Sicca Syndrome, Benign Hypermobility Syndrome, Migraines, Hashimoto's disease, Vertigo, Right carpal tunnel syndrome, Thoracic degenerative disc disease, Major depressive disorder, Panic disorder, and Trauma and stressor related disorder (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.     After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: The claimant can frequently handle and finger. She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch or crawl. She should avoid concentrated exposure to humidity, extreme heat or extreme cold, dusts, odors, gases, fumes, or other pulmonary irritants. She should

avoid unprotected heights, hazardous machinery, and commercial driving. The claimant would be limited to simple, routine tasks and simple work related decisions. She is limited to frequent interactions with supervisors, coworkers, and the general public. She can tolerate few changes in a routine work setting.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on December **, 1993 and was 28 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.  The claimant has at least a high school education (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2018, the alleged onset date, through September 30, 2022, the date last insured (20 CFR 404.1520(g)).

(Tr. 483-95.)

## V.  STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social

Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).

Specifically, this Court's review is limited to determining whether the Commissioner's decision is

supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r*

*of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir.

2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y*

*of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.").  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D.

Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI.  ANALYSIS

In her first assignment of error, Nguyen argues that the ALJ failed to comply with the Appeals Council's June 6, 2022 Order of Remand, which instructed the ALJ to "obtain evidence from a medical expert regarding Plaintiff's migraine headaches, give further consideration to the maximum residual functional capacity, and if warranted, obtain supplemental evidence from a vocational witness."  (Doc. No. 6 at 10.)  Nguyen asserts that "the ALJ failed to obtain reliable testimony from a medical expert and the decision once again failed to adequately evaluate Plaintiff's migraine headaches."  (*Id.* at 11.)  Nguyen maintains that the ALJ misrepresented Dr. Koenig's testimony in the decision.  (*Id.* at 11-12.)  Instead of holding a hearing to obtain testimony from a psychiatric medical expert as suggested by Dr. Koenig, the ALJ ordered a psychological consultative examination after the hearing.  (*Id.* at 12.)  The ALJ reviewed the consultative examination report and found it only partially persuasive.  (*Id.*)  Nguyen argues:

> In addition, contrary to the specific instruction to obtain evidence from a medical expert as to whether Plaintiff's impairments, including migraine headaches, equaled a severe of a Listing, this did not occur. The ALJ failed to comply with the Order when he failed to obtain evidence from a medical expert as to whether the combination of Plaintiff's impairments met and/or equaled a Listing. Dr. Koenig would not offer any testimony and no other medical expert testified at a hearing. Rather, the ALJ scheduled a consultative examination with a nurse practitioner who did not address anything regarding Plaintiff's physical symptoms and related limitations. As such, this matter should be reversed or remanded to correct this error.

(*Id.* at 13.)

29

The Commissioner responds that the ALJ complied with the Order of Remand by taking Dr. Koenig's testimony, and "the ALJ complied with even the more specific parts of the remand order because he questioned Dr. Koenig about whether Plaintiff's impairments met or equaled a listing."  (Doc. No. 8 at 13-14.)  Dr. Koenig ultimately testified "that it could not be established that Plaintiff satisfied her burden to show that she met or equaled a listing."  (*Id.* at 14.)  The Commissioner argues that Dr. Koenig's testimony "was more nuanced than Plaintiff suggests."  (*Id.*)  The Commissioner asserts that the ALJ complied with the Order of Remand by having Dr. Koenig testify and seeking his opinion on whether Nguyen's impairments met or equaled a listing; nothing more was required.  (*Id.* at 15.)  "The fact that the ALJ took the additional step of ordering a consultative psychological examination shows that the ALJ actually went beyond what was required by the remand order."  (*Id.*)

The Sixth Circuit has held that, where a federal district court has reversed the Commissioner's final decision and remanded the case for further proceedings, "it is the duty of ... the agency from which appeal is taken ... to comply with the mandate of the court and to obey the directions therein without variation and without departing from such directions."  *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967). As the Sixth Circuit later explained:

> In some Social Security cases, district courts will include detailed instructions concerning the scope of the remand and the issues to be addressed. In such cases, "[d]eviation from the court's remand order in subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989).  *See also Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967) ... These cases stand for the proposition that the administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order.

*Hollins v. Massanari*, 49 F. App'x 533, 536 (6th Cir. 2002).  In addition, "[w]hen the Appeals Council issues a remand order to an ALJ, the ALJ must 'take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.'"  *Wilson v. Comm'r of Soc. Sec.*, 783 F. App'x 489, 496 (6th Cir. 2019) (quoting 20 C.F.R. § 404.977(b)).  *See also*

*Kaddo v. Comm'r of Soc. Sec.*, 238 F. Supp. 3d 939, 944 (E.D. Mich. 2017) ("[T]he failure by an ALJ to follow a remand order from the Appeals Council, even if that failure is allowed to stand by a later Appeals Council ruling, can constitute a reversible error in federal court. This holds true regardless of whether substantial evidence otherwise supports the Commissioner's final decision.").

The hearing transcript from the June 5, 2023 hearing reveals the following exchanges between the ALJ and independent medical expert Dr. Koenig, a neurologist:

> Q:  And in your review of the file supplemented by your presence here for the hearing, were you able to glean enough information to develop an opinion about Ms. Nguyen's case?
>
> A: Yes, Your Honor.
>
> * * *
>
> Q: Based upon the information that you reviewed, and the testimony you've heard, do you have an opinion as to whether or not there are severe medically determinable impairments that do apply for Ms. Nguyen's case?
>
> A: Your Honor, my feeling, based upon the records as well as her testimony, *is that you have the wrong specialist reviewing the case*. And I'll expand on that now.
>
> Q: Okay.
>
> A: In medicine, including neurology, we like to have one diagnosis or one complaint. In Ms. Nguyen's case, as you've already outlined, we have migraines. We have fibromyalgia. We have sleep disorder. We have dizziness. We have low back pain. We have diarrhea. We have nausea, vomiting. The list goes on and on. And that's bothersome in evaluating her complaints as to how many, on an objective basis, and you say, oh, yes, she has migraines. But how much of all of this is really related to the diagnosis of major depression and panic attacks? And in reviewing this, I can go step by step why she doesn't have certain diagnoses. For example, the diagnosis of POTS she did have the tilt test, which was borderline. In general POTS occurs with dizziness with change of position. It's an orthostatic situation that is a change in blood pressure and heartrate, related to postural changes. In her case, she's complaining of this all the time. Generally, migraines, they occur up to 15 times or more a month, but they're one to two-day events. In her case, she really has continuous migraines. Yet even when she's not having her migraines, she still complains of nausea, vomiting, and diarrhea, which she attributes to the migraines. That's, from my standpoint, it doesn't make sense

to me. And so with her fibromyalgia, she has chronic pain. We don't have identification of the trigger points. Her -- on -- where was it? 8F is her physical therapy evaluation. There's a question of the rheumatologist even finding anything compatible with joint disease, or findings of joint problems, fibromyalgia. *This concept of brain fog is interesting, but I would refer that to a psychiatrist to confirm whether or not -- what that means, or whether or not it even exists.* So my problem, in making an evaluation for you, or making a diagnosis for you is as I've stated. I just -- it's all functional, based on her complaints. While I appreciate that she's getting medicine like Plaquenil and IV medicine for migraines, I just -- as the saying goes, there's no there there. *And so from my standpoint, I can't give you a neurological diagnosis. And I am aware of 19-4p, evaluating cases involving primary headache disorders. I am aware of 12-2p, evaluation of fibromyalgia. And I've considered those. But I do not -- cannot substantiate those diagnoses.*

* * *

Q: Okay. And so what I hear you saying -- and, again, I don't want to put words in your mouth, so do correct me if I'm misstating it. *It appears as though you're saying that without further investigation as to sort of the nature and linkages between the different symptoms and the potential different diagnoses, that you don't feel comfortable setting forth an opinion with regard to Ms. Nguyen's condition.* Am I hearing that basically correctly?

A: *Correct.* From a neurological point of view, that is correct.

Q: Okay. So keeping that in mind, *just focusing your attention specifically on what you've been able to glean of her migraines, through your review of the records, today's testimony, you are not prepared to say that she meets a listing or functionally equals a listing with regard to her migraine headaches.* Am I hearing that correctly as well?

A: *That's correct, sir.*

Q: But I would also gather from your testimony, that while you do not necessarily feel comfortable declaring that she does meet a listing, it does not sound like you're saying that she absolutely does not meet or functionally equal a listing either. *It's more a question of feeling improperly equipped to render an opinion whatsoever.*

A: *Exactly. The question is really how much of all of this is related to a psychiatric diagnosis.* And even though my boards are in neurology, psychiatry, I have never practiced psychiatry, and I do not hold myself out as being a psychiatrist.

Q: I certainly understand that. And forgive me if I'm sounding repetitive, but it sounds like that *if the question is, does she cross that threshold to*

32

> *providing the evidence necessary for meeting or functionally equal a listing,*
> *you cannot deem that burden to have been met, based upon what you've*
> *reviewed, what you've heard through testimony, all the information that's*
> *been provided to you with regard to Ms. Nguyen's case.* Again, is that a fair
> statement, or do you --
>
> A: *That's correct.*

(Tr. 529-34) (emphasis added).

Nguyen's attorney then asked Dr. Koenig:

> Q: Well, I -- just to kind of finish the loop that I think you were on, but I
> didn't hear this questioning. *Maybe it was inferred, is that maybe you believe*
> *that the most prudent course going forward, would be to retain the services*
> *of a psyche ME. Is that correct*?
>
> A: *That's correct, sir.*

(*Id.* at 534.)  Nguyen's attorney made the request for a psychiatric medical expert, which the ALJ stated

would be discussed later during the hearing.  (*Id.*)  The hearing transcript reveals the following exchange

between Nguyen's attorney and the ALJ:

> ALJ: Okay. Thank you. Well, Mr. Liner, then let's address the question of
> your request from a moment ago for, if I understood it correctly, for a
> psychological ME. Is that correct?
>
> ATTY: I believe that was the recommendation of this ME, yes.
>
> ALJ: I have two issues that are kind of percolating in my brain here. The first
> is one that's not really the specific direction that that particular aspect of the
> remand took us, although I know that sometimes things do go different
> directions, and you respond accordingly. So that's kind of a minor issue. The
> second issue I have though -- and I'll give you an opportunity to address it.
> *What I heard Dr. Koenig testify to was that as a standalone expert with one*
> *particular type of expertise, that his ability to make a judgment as to the*
> *nature of her limitations was limited because he did not have sort of that*
> *global assessment and expertise that he could rely on, in order to make a*
> *judgment.* I guess what I'm wondering is if you have a psychological expert
> who testifies, without having that same expertise in the field of neurology,
> aren't we going to run into the same problem, and aren't we just kind of
> spinning our wheels a little bit?
>
> ATTY: I don't think we're spinning our wheels. I'm not sure if where your
> head is going, and that perhaps a more general doctor would be capable of

commenting on the whole picture here together. I -- to address -- I guess I'll address the first thing that you said about -- forgive me. I'm sorry. I'm trying to --

ALJ: Take -- it's fine. If you want to take a moment and collect your thoughts, that's quite all right. I'm not in a hurry.

ATTY: No, no, no.

ALJ: Okay.

ATTY: The, you know, ultimately, what I believe, you know, is appropriate, is just that he's saying he thinks that a lot of these issues might be related to an underlying psychological concern. *And so a psyche ME having reviewed the entire picture can still answer questions about, you know, the, you know, the likely source of these limitations. The only other thing that I can think of is that maybe there was a CE ordered, a psyche CE ordered, as opposed to a psyche ME, which perhaps would give somebody an opportunity to review all these records, and actually examine the Claimant, and help piece things together.* But I guess I'm not seeing the dead end that you're seeing, which is kind of the second bigger piece that we have to deal with.

ALJ: Well, here's -- and just to clarify the point with regard to the remand itself, *what I was directed to do was obtain evidence from a medical expert related to identify the Claimant's impairments, including migraine headaches, equaling the severity of an impairment, listing, [INAUDIBLE] et cetera. I believe I've done that. I did obtain evidence from a medical expert who opined that they did not think the burden was met, that there is a listing that has been met in this case. I don't feel as though -- I'm not – I don't feel that it's incumbent upon me to keep seeking experts, medical experts, until I find somebody who says it does.* So I don't know that I feel motivated to do it. However, that's probably disheartening for you, but I will say that your suggestion of a CE is more appealing to me, because now you're not just relying on the basis of a cold record, as you suggested. You do have the ability to interact with the Claimant. You have the ability to sort of take a look at the entirety of the record, and make a determination from there. And as I look at the file, I do not believe that before now we have engaged a CE. I don't think -- I don't see one in there. So unless I'm mistaken, I'm just overlooking it right now. I think where we stand is that that may be a more meaningful use of our time than bringing in another ME, and conducting another hearing with an ME. I don't see any particular value in that. So if you're willing -- if you're interested in having a CE, I'm open to that suggestion. But I'm not going to schedule another hearing with an ME.

ATTY: I think that that would be appropriate. I mean, frankly, I think that the terminology used by the doctor that we had was, you know, the wrong expert

34

testifying, but I think ultimately if we had asked him about a CE instead, he would have agreed that that was an appropriate course.

ALJ: Maybe. Although I will just -- *while I certainly heard the same testimony you did, if I'm asked to review migraine headaches in particular, I can't think of a more appropriate expert than a neurologist. And I'm not sure how much more direct a link I can make than that.* But that aside, you know, again, I think the CE -- he did seem to be making a suggestion that a more global viewpoint could be appropriate. So I will send this back for scheduling of a CE. What this means to you, Ms. Nguyen, is that we are going to ask you to go visit with a psychologist or a doctor in that field, and have a meeting with that doctor, where they will engage you and have a discussion with you about the specifics of your case. I will tell you that we will schedule that and work with you on the schedule. And I have no reason to think that you wouldn't appear, but I only give people one opportunity to attend those, baring [sic] some very significant issues. And so when we do schedule that with you, which we'll certainly do with your input, please do make sure that you attend the CE as its scheduled. Okay?

(*Id.* at 540-43.)

In the Order of Remand, the Appeals Council determined that "while the decision notes the claimant's migraines are severe, there is no consideration provided at step 3 of whether the claimant's headache impairments equaled a listing pursuant to Social Security Ruling 19 -4p. Further consideration is needed." (*Id.* at 578.) The Appeals Council ordered the ALJ to "[o]btain evidence from a medical expert related to whether the claimant's impairment including migraine headaches equals the severity of an impairment listed in Appendix 1, Subpart P, Regulations No. 4 (20 CFR 404.1513a(b)(2) and SSR 17-2p)." (*Id.*) The exchanges from the hearing above reveal that, contrary to the ALJ's assertions otherwise, Dr. Koenig testified that (1) he was not the correct expert to be offering an opinion; (2) he could not give a neurological diagnosis; (3) he did not feel comfortable offering an opinion regarding Nguyen's impairments; (4) he did not feel comfortable opining whether Nguyen met or equaled a listing, as he felt "improperly equipped to render an opinion whatsoever"; and (5) the question was how much of Nguyen's symptoms were related to a psychiatric disorder. (*Id.* at 530-33.) The Court cannot say, based on the entirety of Dr. Koenig's testimony reflected in the hearing transcript, that the fact that Dr. Koenig agreed

with the ALJ that "if the question is, does [Nguyen] cross that threshold to providing the evidence necessary for meeting or functionally equal a listing, you cannot deem that burden to have been met, based upon what you've reviewed, what you've heard through testimony, all the information that's been provided to you with regard to Ms. Nguyen's case" negates his repeated insistence that he did not feel he could offer an opinion regarding whether Nguyen's headaches equaled a listing and that he was not the proper expert to be an offering such an opinion.  (*Id.* at 530-34.)  And the subsequent psychiatric consultative examination did not analyze Nguyen's migraines (or their potential relation to any mental impairment) nor offer an opinion as to whether Nguyen's headaches equaled a listing.  (*Id.* at 1641-51.) Therefore, although a close call, the Court concludes that this matter must be remanded for the ALJ's failure to comply with the Appeals Council's Order of Remand.

As the Magistrate Judge recommends remand on this ground, in the interest of judicial economy, the Magistrate Judge declines to reach Nguyen's additional assignments of error.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be VACATED AND REMANDED for further proceedings consistent with this opinion.

Date: October 30, 2024                                    *s/ Jonathan Greenberg*
                                                          Jonathan D. Greenberg
                                                          United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).**